OPINION OF THE COURT
Gerard M. Weisberg, J.
The issue presented by this case is whether claimant has standing to object to a request by defendant’s counsel to withdraw.
The motion is brought by the law firm of Sutera, Siracuse & Sutera, P. C. (Sutera), which was retained as trial counsel by the firm of Reid and Alio, Esqs. (Reid), attorneys for Fidelity and Casualty Company of New York (Fidelity). Reid took over *483 the defense of this claim from the Attorney-General* by virtue of a policy of insurance, which purportedly applied to the claim. On May 22, 1979, however, the Underwriters Adjusting Company, an agent for Fidelity received a communication from the New York State Department of Transportation which caused it to reverse its position and deny the existence of insurance coverage. By letter dated May 31, 1979, the New York State Department of Law and Sutera were notified of Fidelity’s position, precipitating the instant motion of which both claimant’s counsel and the Attorney-General were given notice.
The Attorney-General has not responded, but claimant’s counsel has submitted an affidavit opposing the motion upon the grounds that claimant was ready for trial over one year ago and that the defendant has acted in a dilatory fashion, and is guilty of laches.
The relationship between the Attorney-General and private law firms who represent the State as trial counsel or otherwise is defined by subdivision 1 of section 63 of the Executive Law which provides that "[t]he attorney-general shall: 1. Prosecute and defend all actions and proceedings in which the state is interested”. (Emphasis added.) The Attorney-General, therefore, must be the attorney of record in all claims against the State, and other attorneys to whom the defense or prosecution of a particular action may be delegated appear "of counsel.” Regardless of any changes in trial counsel, the State is assured of representation since the ultimate responsibility for defending the State reposes solely in the Attorney-General from whom it never departs. Thus, Sutera’s withdrawal would create no break in the chain of representation, but merely a change in trial personnel.
The disclaimer of coverage by the insurance company, Sutera’s actual client, places the firm in a precarious position vis-á-vis this lawsuit which justifies its withdrawal. (Torres v Bratcher, 35 AD2d 922; Hintze v Kaufman, 15 AD2d 816.) The Attorney-General has in any event impliedly consented to Sutera’s departure by its silence, and generally a client and his lawyer may voluntarily part company without the court’s approval.
 By its opposition, claimant purports to insist that the *484 State retain the services of a particular lawyer. This is a rather bizarre proposition. The State, like any other litigant, has the right to counsel or trial counsel of its choice and, because of the confidential nature of the relationship, may discharge its lawyer at will or permit his voluntary withdrawal. Only under the rarest of circumstances can we conceive of justification for permitting a party’s viewpoint to bear upon his adversary’s choice. Certainly, where a conflict of interest exists, a litigant may seek to have his opponent’s lawyer removed. However, there is no conflict of interest here and the objection is not to counsel’s appearance, but rather to his disappearance.
Of course, the privilege to discharge or permit the withdrawal of counsel can be abused. If by repeatedly changing lawyers a party seeks to gain an unfair advantage through delay, the court can take action through its control of the calendar. This remedy is highly preferable to interfering with the attorney-client relation.
It does not appear that any dilatory conduct has transpired. The past delay caused by substitution of counsel, and any further delay which might be occasioned by the granting of this motion, are founded upon a legitimate question over the vicissitudes of the State’s insurance coverage. Delay is always regrettable, but in this situation, certainly unremarkable. Sutera has not been guilty of laches, and indeed acted quite promptly after receiving its client’s determination of no coverage. The State was laboring under a misapprehension, and, therefore, cannot be accused of sitting on its rights. The application of the laches doctrine to the present case is, therefore, both theoretically questionable and factually unsupported.
Accordingly, the motion is granted.

 The Attorney-General had previously appeared by filing its verified answer on October 29, 1976.